NOT FOR PUBLICATION

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| LINDA FRANULOVIC, on behalf of herself and all others similarly situated, | Civil Action No. 07-539 (RMB) [Docket No. 43] |
| Plaintiff, | |
| v. | **OPINION** |
| THE COCA-COLA COMPANY, | |
| Defendant. | |
| CATHERINE M. MELFI, on behalf of herself and all others similarly situated, | Civil Action No. 07-828 (RMB) [Docket No. 10] |
| Plaintiff, | **OPINION** |
| v. | |
| THE COCA-COLA COMPANY, NESTLE USA, INC., and BEVERAGE PARTNERS WORLDWIDE, N.A., | |
| Defendants. | |

**APPEARANCES:**

Mark Cuker, Esquire
Williams Cuker Berezofsky
Woodland Falls Corporate Center
210 Lake Shore Drive East, Suite 101
Cherry Hill, NJ 08002
    *Attorney for Plaintiff Linda Franulovic*

Peter S. Pearlman, Esquire
Cohn, Lifland, Pearlman, Herrmann & Knopf, LLP
Park 80 Plaza West One

1

Saddle Brook, NJ 07663
    *Attorney for Plaintiff Catherine Melfi*
Gita F. Rothschild, Esquire
Peter Jay Boyer, Esquire
Mccarter & English, LLP
Four Gateway Center
100 Mulberry Street
PO BOX 652
Newark, NJ 07102-0652
    *Attorney for Defendants The Coca-Cola Company &*
    *Beverage Partners Worldwide, N.A.*

Warren W. Faulk, Esquire
Brown & Connery
360 Haddon Avenue
Po Box 539
Westmont, NJ 08108
    *Attorney for Defendants Nestle USA, Inc.*


**BUMB**, United States District Judge:

**Introduction:**

    This matter has come before the Court upon two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in two separate, but nearly identical, matters involving a beverage called Enviga.  For the reasons expressed below, Defendants' motions will be granted in both of the above-captioned matters.


**Factual Background:**

    *a)    Melfi Complaint*

    Plaintiff, Catherine Melfi, filed her Complaint against Defendants The Coca-Cola Company, Nestle, USA, Inc., and Beverage Partners Worldwide, (hereinafter collectively as the "Defendants"), as a putative class action, alleging that

2

Defendants breached an express warranty (Count I), the implied warranty of fitness for a particular purpose (Count II), and violated the New Jersey Consumer Fraud Act ("CFA") (Count III), via the sale and marketing of Enviga, a "carbonated beverage with a proprietary blend of caffeine and epigalocatechin gallate (EGCG), an antioxidant that occurs in green tea." Melfi Compl. ¶ 4.  With regard to Count I, Melfi claims that Defendants expressly warranted that Enviga "causes a consumer to burn more calories than consumed, thus resulting in a net caloric expenditure as a result of ingesting the beverage," and that consumers relied on this express warranty to purchase the product at a cost of $1.29-$1.49 per can, but the warranty is "unsubstantiated, uncorroborated and, in the vast majority of consumers if not all consumers, untrue."  Id. ¶¶ 62-65.

For her second count, that Defendants breached their implied warranty of fitness for a particular purpose, Melfi contends that Defendants' extensive marketing, labeling, advertising, and sales impliedly warranted to Melfi and class members that it was fit for the particular purpose "as a negative-calorie diet, weight loss and weight control product."  Id. ¶ 69.  Melfi alleges that Defendants knew that Melfi and class members would purchase Enviga for the particular purpose of weight loss and weight control, and in purchasing and consuming Enviga, they relied on Defendants' "skill and expertise as beverage manufacturers," but

3

the claims made by Defendants were unsubstantiated, uncorroborated and untrue, thus causing Enviga to be unfit for its particular purpose when sold.  Id. ¶¶ 69-75.

Count III of Melfi's Complaint alleges that Defendants breached the CFA "when they engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, and knowing concealment or omission of material facts with the intent that others rely on such, in connection with the sale and advertisement of Enviga."  Id. ¶ 79. Specifically, Melfi claims that Defendants' acts included:

> a. Advertising Enviga without having prior substantiation for all advertised claims;
> b. Advertising Enviga as effective by itself - e.g., "the calorie burner" - for weight control;
> c. Advertising Enviga to all consumers, when Defendants knew that the minimal study evidence showed that Enviga had a desirable effect only on a discreet and minor segment of the population;
> d. Advertising Enviga without the material fact that one would have to drink three cans daily (at a daily cost of over $4.00) for as long as the person wanted to have whatever effect might occur; and
> e. Failing to disclose that it would be necessary to spend weeks drinking three cans of Enviga a day - at least 100 cans at an approximate aggregate cost of $150 - just to enjoy a possible loss of one pound.  One pound loss of weight over an extended period of time - in the unlikely event it did occur - is too minimal and conjectural to be meaningful.

Id. ¶¶ 79-80.

Defendants have moved to dismiss Counts II and III of Melfi's Complaint for failure to state a claim pursuant to Federal Civil Procedure Rule 12(b)(6).  Melfi has opposed

4

Defendants' motion.

    *b)*    *Franulovic Complaint*

The allegations in Plaintiff Linda Franulovic's Complaint, also a putative class action, are based on a similar set of facts. Franulovic avers that the Defendant, the Coca-Cola Company, ("Coke"), engaged in "illegal, fraudulent and deceptive business practices that harm[ed] New Jersey consumers" in relation to the sale of Enviga, "a canned soft drink containing a proprietary combination of caffeine and an extract of green tea called 'epigallocatechin gallate' or 'EGCG.'" Franulovic Compl. ¶¶ 2 & 16. Franulovic avers that Enviga is marketed as a "weight-loss or weight control product, based on the novel claim that drinking three cans of Enviga (over a quart) every day over a lengthy period of time will actually cause the expenditure of far more calories than the product contains." Id. ¶ 19.

Franulovic started drinking Enviga after reading the label's representations about calorie burning. Id. ¶ 46. She stopped drinking Enviga after "seeing a television story that refuted Coke's claim that drinking three cans of Enviga a day would help people lose weight." Id. ¶ 47. Franulovic believes that the weight-loss representations for Enviga cannot be substantiated because the "small number of studies that exist are conflicting and inadequate to substantiate the representations." Id. ¶ 20.

Franulovic's Complaint cites several representations made by

advertisements for Enviga that tout its weight-loss properties
and she avers that such claims are based on a single study that
is "meaningless." Id. ¶¶ 22-24.  She complains that there is no
substantiation for Enviga's claims because there is no evidence
that the product has any effect on calorie balance or weight for
the majority of adults who are not young, healthy and thin and
that there is "no evidence at all that Enviga has any positive
effect of any kind on free-living consumers."  Id. ¶¶ 29-30.

Her Complaint contains two counts: Count I for violation of
the CFA and Count 2 for "violations of the New Jersey Food and
Drug Laws in violation of the New Jersey Consumer Fraud Statute."
In Count I, Franulovic states that Coke engaged in unconscionable
commercial practices, deception, fraud, false pretense, false
promise, misrepresentation and knowing concealment or omission of
material facts with the intent that others rely on such in
connection with the sale and advertisement of Enviga.  More
specifically, Coke allegedly violated the CFA by advertising
Enviga without prior substantiation for all advertised claims and
failing to disclose that it would be necessary to drink three
cans daily for weeks "just to enjoy a possible loss of one
pound."  Id. ¶ 59.  Count II avers that Coke violated the CFA
because Enviga is misbranded in violation of the New Jersey Food
and Drug law.  Id. ¶ 62-63.

Coke has moved to dismiss Franulovic's Complaint pursuant to

6

Rule 12(b)(6). Franulovic has opposed the motion.

**Standard for Motion to Dismiss:**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Miller v. Fortis Benefits Ins. Co.</u>, 475 F.3d 516, 519 (3d Cir. 2007). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. <u>Bogosian v. Gulf Oil Corp.</u>, 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims.'"
Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).  A court
need not credit either "bald assertions" or "legal conclusions"
in a complaint when deciding a motion to dismiss.  In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d
Cir. 1997).  The defendant bears the burden of showing that no
claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d
Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926
F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court, in deciding a Rule 12(b)(6) motion, must
only consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.  S.
Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181
F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an
undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are
based on the document."  Pension Benefit Guar. Corp. v. White
Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If
any other matters outside the pleadings are presented to the
court, and the court does not exclude those matters, a Rule
12(b)(6) motion will be treated as a summary judgment motion
pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**Analysis:**

*a) The Melfi Complaint*

Defendants have moved to dismiss Melfi's claim that Defendants breached an implied warranty of fitness for a particular purpose (Count II) and Plaintiff's claim that Defendants violated the New Jersey CFA (Count III).

<u>1)   Count II</u>

Defendants argue that Melfi's claim regarding an implied warranty of fitness for a particular purpose must be dismissed because Melfi has failed to allege a particular purpose for Enviga, and she has failed to allege a communication between herself and Defendants, both of which, they argue, are required to sustain a claim under New Jersey law.

New Jersey law provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.J. Stat. Ann. § 12A:2-315.

First, with regard to Defendants' argument that Melfi has not alleged a particular purpose for Enviga, Defendants contend that Melfi has alleged the same description for both its ordinary purpose and particular purpose, which is untenable.  In her

Complaint, Melfi alleges that "Defendants did not market Enviga as an ordinary soft drink," but rather marketed it as "a weight-loss or weight-control product."  Melfi Compl. ¶¶ 5, 23.  She also alleges that, through their marketing, Defendants impliedly warranted that Enviga "was fit for its particular purpose, namely, as a negative-calorie diet, weight loss and weight control product."  Id. ¶ 69.  Based on these two allegations, Defendants contend that Melfi has construed Enviga's ordinary purpose as a weight-loss and weight-control product, while at the same time also construing Enviga's particular purpose as a weight-loss and weight-control product.  Because the claimed ordinary purpose of the drink is the same as its claimed particular purpose, Defendants argue, Melfi has not actually alleged a particular purpose for Enviga, a prerequisite for a breach of implied warranty of fitness for a particular purpose claim.

Second, with regard to their argument that Melfi has failed to allege a communication between herself and Defendants, Defendants argue that an allegation of a direct communication is necessary to sustain a claim for breach of implied warranty of fitness for a particular purpose.  Specifically, Defendants contend that Melfi's "uncommunicated interpretation" of Defendants' advertising - that Enviga is a weight-loss beverage - is not enough to establish that Defendants had reason to know

that Melfi and other buyers would rely on Defendants' skill or judgment to provide them with a beverage that would help with weight loss.

In opposition to Defendants' arguments, Melfi does not specifically address Defendants' argument regarding her failure to properly allege a particular purpose of Enviga. Melfi does contest, however, the argument that a direct communication is needed to sustain a claim for breach of implied warranty of fitness for a particular purpose. Further, Melfi refutes the argument that Defendants would not know that Melfi and other consumers would rely on their representations regarding the weight-loss effects of their beverage.

This Court finds that Melfi's implied warranty claim does not fail because she has failed to allege any communication of a particular purpose to the Defendants or any recommendation from Defendants. Defendants urge an overly literal interpretation, i.e., an actual communication between buyer and seller must exist. The plain language of the statue, however, lends itself to the interpretation that a Plaintiff need not directly communicate to the seller:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.J. Stat. Ann. § 12A:2-315 (emphasis added).  In other words, a
seller might have reason to know that a buyer wants to buy a
product for a particular purpose other than via direct
communication.  See Comment 1 to N.J. Stat. Ann. § 12A:2-315
("Whether or not this warranty arises in any individual case is
basically a question of fact to be determined by the
circumstances of the contracting. Under this section the buyer
need not bring home to the seller actual knowledge of the
particular purpose for which the goods are intended or of his
reliance on the seller's skill and judgment, if the circumstances
are such that the seller has reason to realize the purpose
intended or that the reliance exists.") (emphasis added).  Here,
Melfi has certainly pleaded sufficient facts to show that
Defendants had knowledge of the particular purpose for which the
goods were intended (per extensive advertising regarding Enviga's
weight-loss properties).  Furthermore, this Court notes that the
Defendants have cited Henningsen v. Bloomfield Motors, Inc., 32
N.J. 358 (1960), for the proposition that Plaintiff has failed to
make known to the seller the particular purpose for which Enviga
was purchased.  However, Defendants omit the language from
Henningsen making clear that a buyer can "by implication" make
her particular purpose known to the seller.  Id. at 370.

    Nevertheless, Melfi's claim must be dismissed because she

has failed to allege the basic element of a claim for a breach of implied warranty of fitness for a particular purpose - she has failed to allege a "particular purpose" of Enviga that differs from its original purpose.  Comment 2 to N.J. Stat. Ann. § 12A:2-315 explains what constitutes a "particular purpose," as opposed to a good's "ordinary purpose":

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.  For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Id.

As pointed out by Defendants, Melfi has alleged in her Complaint that Enviga is marketed not as a soft drink, but as a weight-loss or weight-control product.  Thus, Enviga's ordinary purpose as alleged by Melfi is that it is for weight-loss or weight-control.  Melfi has also alleged that Enviga's particular purpose is for weight-loss and weight-control.  This is a fundamental flaw in Melfi's claim.

It is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose; without that distinction, there can be no claim for breach of implied warranty of fitness for a particular purpose.  See Lithuanian Commerce Corp. v. Sara

13

Lee Hosiery, 219 F. Supp. 2d 600, 615 (D.N.J. 2002) (holding that the particular purpose must differ from the ordinary purpose). If Melfi had alleged that Enviga's ordinary purpose was as a soft-drink, but that its particular purpose was for weight-loss, then perhaps her claim would not fail.  It is clear from Melfi's Complaint, however, that Melfi does not view Enviga as an ordinary soft-drink.  Indeed, the entire thrust of Melfi's claims is that Enviga is a weight-loss drink, the effectiveness of which is questionable and not revealed to consumers.  Consequently, because Melfi has not alleged a particular purpose of Enviga that differs from its alleged ordinary purpose, Melfi's claim that Defendants breached the implied warranty of fitness for a particular purpose fails.

In her brief in opposition to Defendant's motion, Melfi requests leave to amend her Complaint should this Court agree that she has failed to allege a particular purpose different from the ordinary purpose.  Rule 15(a) provides that a party "may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."  The Third Circuit has recently held that "a motion to dismiss is not a responsive pleading and that Rule 15(a), therefore, allows one amendment as a matter of right up to the point at which the district court grants the motion to dismiss and enters final judgment." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482

14

F.3d 247, 252 (3d Cir. 2007) (citation omitted).  "After judgment

dismissing the complaint is entered, a party may seek to amend

the complaint (and thereby disturb the judgment) only through

Federal Rules of Civil Procedure 59(e) and 60(b)."  <u>Id.</u>

     In this case, the Court will not grant Melfi's informal

request because she has failed to properly request leave to amend

the Complaint; "[T]o request leave to amend a complaint, the

plaintiff must submit a draft amended complaint to the court so

that it can determine whether amendment would be futile.[1]

Indeed, we have held that a failure to submit a draft amended

complaint is fatal to a request for leave to amend."  <u>Fletcher-</u>

<u>Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247,

252 (3d Cir. 2007); <u>see</u> <u>also</u> <u>Ranke v. Sanofi-Synthelabo Inc.</u>, 436

F.3d 197, 206 (3d Cir. 2006)(finding that court did not abuse its

discretion in not granting request for leave to amend presented

as part of opposition brief because such leave was not properly

requested).  This Court will, however, consider a properly filed

motion.

          2)   Count III

     Melfi claims that Defendants violated New Jersey's Consumer

Fraud Act with their sale and marketing of Enviga.  Defendants

argue that Melfi's CFA claim must be dismissed because Melfi has

---

[1] Pursuant to Local Rule 7.1(f), Melfi must attach a copy of
the amended pleading to her motion.

not pleaded her claim with the required particularity, and many of the statements identified by Melfi as false advertising are either opinions or mere puffery and cannot form the basis of a CFA claim.

The CFA provides, "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction." N.J. Stat. Ann. § 56:8-19. Melfi alleges that Defendants violated N.J. Stat. Ann. § 56:8-2, "Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice," and N.J. Stat. Ann. § 56:8-2.10, "[a]cts constituting misrepresentation of identity of food."

Defendants contend that Melfi has alleged that Defendants' claims about Enviga are "unsubstantiated," "uncorroborated," or "untrue," but Melfi has failed to specify which claims she alleges are unsubstantiated, uncorroborated, or untrue. Defendants also contend that Melfi has failed to identify which particular claims she relied upon in purchasing Enviga, which is fatal to her claim. Further, Defendants argue that Melfi has failed to plead with particularity with respect to each Defendant. Finally, Defendants argue that Melfi has failed to allege when, where, and what quantity of Enviga she purchased,

16

and how much she paid for it.

The primary issue raised by Defendants is whether Melfi has adequately alleged an "ascertainable loss," which is the only prerequisite for maintenance of a private action to remedy a violation of the CFA.  Laufer v. U.S. Life Ins. Co. in City of New York, 896 A.2d 1101, 1110 (N.J. Super. Ct. App. Div. 2006) (stating that the requirement of an "ascertainable loss" is purely a standing requirement)(citing Weinberg v. Sprint Corp., 801 A.2d 281 (2002)).  The CFA does not define what constitutes an "ascertainable loss," and there is no legislative history "that sheds direct light on those words."  See Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783,792 (N.J. 2005) (citation omitted).  The New Jersey Supreme Court has instructed, "[t]o give effect to the legislative language describing the requisite loss for private standing under the CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss."  Id. "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable," and in order to raise a genuine dispute, "the plaintiff must proffer evidence of loss that is not hypothetical or illusory."  Id.

Here, Melfi has not alleged in her Complaint any particulars as to her own experience with Enviga.  The only specific allegation is that she purchased Enviga.  She has not alleged

17

when she purchased Enviga or for what price, how much of the
beverage she purchased and consumed, which advertising enticed
her to buy Enviga, her expectations for Enviga based on the
advertising, or Enviga's failure to live up to those
expectations.  Instead, Melfi has alleged general statements that
Enviga's claims are false and misleading to the majority of
"average reasonable consumers."  While it could be implied that
Melfi's allegations concerning the "average reasonable consumer"
are also her own, such an implication is insufficient, however,
because her claim is based on a statute that requires a plaintiff
to plead a particularized ascertainable loss in order to have
standing to bring such a claim.

Judge Chesler recently addressed the same issue in <u>Solo v.
Bed Bath & Beyond, Inc.</u>, Civ. A. No. 06-1908, 2007 WL 1237825
(D.N.J. April 26, 2007).  The plaintiff, Joe Solo, filed a class
action complaint against Bed Bath & Beyond ("BB&B"), claiming
that BB&B violated the CFA when it misrepresented the thread
count in its bed sheets.  BB&B moved to dismiss Solo's complaint
for, inter alia, his failure to adequately identify his
ascertainable loss.  In granting BB&B's motion to dismiss, the
court explained,

> At numerous points in the Amended Complaint, Plaintiff
> generally alleges that he and the members of the
> proposed class purchased multi-ply bed linens and that
> Defendant misrepresented the thread count of these
> multi-ply linens. Plaintiff alleges that he purchased a
> sheet set that was advertised as having "a '1000 Thread

Count,'" but that the sheet set actually had a thread
count "of only 492."  Plaintiff also broadly states
that "Plaintiff and the proposed Class and Subclass
Members have suffered an ascertainable loss in that
they purchased linens that were of a lower quality and
less valuable than the linens they were promised."
These broad and conclusory allegations are not
sufficient to demonstrate an ascertainable loss. Under
the CFA, Plaintiff is required to plead specific facts
setting forth and defining the ascertainable loss
suffered. See, e.g., Cox, 138 N.J. at 21
("Traditionally, to demonstrate a loss, a victim must
simply supply an estimate of damages, calculated within
a reasonable degree of certainty."); Dabush v.
Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 116 (N.J.
Super. Ct. App. Div. 2005) ("The [CFA] does not provide
for recovery for statutory damages where a plaintiff
cannot show actual harm.").  Plaintiff fails to
specifically allege that what he did received was of
lesser value than what was promised, i.e., that the
sheets he received were worth an amount of money less
than the sheets he was promised, or that he experienced
a measurable out-of-pocket loss because of his
purchase.  Therefore, Plaintiff has failed to set forth
either an out-of-pocket loss or a demonstration of loss
in value sufficient to satisfy the ascertainable loss
requirement.  See Theidemann, 183 N.J. at 248 (The
"certainty implicit in the concept of an 'ascertainable
loss' is that [such loss] is quantifiable or
measurable.").

Solo, 2007 WL 1237825, *3.

Similarly here, Melfi has failed to adequately allege her

ascertainable loss.  In her Complaint, Melfi alleges that in

violation of the CFA, Defendants engaged in unconscionable

commercial practices in connection with the sale of Enviga, and

she lists five specific examples:

    a. Advertising Enviga without having prior substantiation
    for all advertised claims;
    b. Advertising Enviga as effective by itself - e.g., "the

calorie burner" - for weight control;

c. Advertising Enviga to all consumers, when Defendants knew that the minimal study evidence showed that Enviga had a desirable effect only on a discreet and minor segment of the population;

d. Advertising Enviga without the material fact that one would have to drink three cans daily (at a daily cost of over $4.00) for as long as the person wanted to have whatever effect might occur; and

e. Failing to disclose that it would be necessary to spend weeks drinking three cans of Enviga a day - at least 100 cans at an approximate cost of $150 - just to enjoy a possible loss of one pound.  One pound loss of weight over an extended period of time - in the unlikely event it did occur - is too minimal and conjectural to be meaningful.

Melfi Compl. ¶¶ 79-80.

Melfi's conclusory statement that she and other consumers have suffered an "ascertainable loss" is insufficient. Her claims only focus on Defendants' conduct, and she does not allege that she, or others, actually purchased and consumed Enviga in order to obtain the advertised benefit, and does not allege that she did not enjoy the advertised benefit.  Melfi has not alleged that (1) she drank three cans of Enviga for several weeks and did not lose one pound, or (2) that when she drank Enviga, it did not burn calories, or (3) that she was not part of the discreet segment of the population that could have benefitted from the prescribed use of Enviga.  Melfi actually received a beverage for her money, and she has not alleged how the purchase of that beverage constituted a specific loss.

Correspondingly, Melfi's CFA claim fails because she has not

20

alleged that her "ascertainable loss" was caused by Defendants'
conduct.  Judge Chesler also addressed this issue in Solo v. Bed
Bath & Beyond.  In order to maintain a claim under the CFA, a
plaintiff "must show a causal relationship between the unlawful
practice and the 'ascertainable loss,'" but in the case before
Judge Chesler, Solo did not plead in his Complaint how the
ascertainable loss was attributable to the unlawful conduct.
Solo, 2007 WL 1237825 at *4 (citations omitted).  Judge Chesler
explained,

> Adequate explanations would include a statement by
> Plaintiff indicating that Plaintiff purchased the
> sheets in part because of the representation that the
> sheets were "1000 thread count," or, that Plaintiff
> would not have purchased the sheets had they been
> labeled with the actual thread count.  See, e.g., Gross
> v. Johnson & Johnson-Merck Consumer Pharm., 303 N.J.
> Super. 336, 346 (N.J. Super. Ct. App. Div. 1997) (CFA
> class could only include persons who "saw the
> challenged advertisements" and "would not have
> purchased the Pepcid but for the challenged
> advertisements."); Strzakowlski v. Gen'l Motors Corp.,
> No. 04-4740, 2005 U.S. Dist. LEXIS, at *25 (D.N.J. Aug.
> 16, 2005) (plaintiff adequately alleged CFA claim where
> plaintiff claimed that she would not have purchased her
> vehicle if GM had disclosed the defect at issue); Int'l
> Union of Operating Eng'rs Local # 68 Welfare Fund v.
> Merck & Co., Inc., 384 N.J. Super. 275, 289 (N.J.
> Super. Ct. App. Div. 2006) (plaintiff's allegations
> that Merck's fraud "induced P & T committees to place
> Vioxx on healthcare plans' formularies" demonstrated a
> sufficient causal connection between the alleged fraud
> and the ascertainable loss."). Plaintiff has not
> provided any such explanation of the connection between
> his alleged damages and the wrongful conduct of
> Defendants. As such, Plaintiff has failed to adequately
> plead the existence of a causal nexus between the
> alleged misrepresentations and his ascertainable loss,
> and his CFA claim and Amended Complaint must be
> dismissed.

Id.

    Similarly, Melfi does not allege that she purchased Enviga because of a certain misleading ad, or that she purchased the prescribed amount of Enviga and did not enjoy the advertised effects.  Melfi also does not allege that other consumers actually purchased the beverage because of Defendants' advertising, or that they did not get the advertised results.  Instead, Melfi's claims generally state that Enviga's marketing was false and misleading, without alleging that this false advertising caused her a quantifiable loss.  Consequently, as Melfi's Complaint stands now, because Melfi has not properly alleged an ascertainable loss or causation as required in order to maintain a CFA claim, Melfi's CFA claim must be dismissed.[2]

    Apparently recognizing these deficiencies in her Complaint,

---

[2] This also complies with the general principle of standing. In order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted).  Additionally, there must be a causal connection between the injury and the conduct complained of; that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Id. (citations omitted).  It must also be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  Id. at 561. (citations omitted).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Lewis v. Casey, 518 U.S. 343, 357 (1996) (citations omitted).

in her opposition to Defendants' motion to dismiss, Melfi submitted a declaration setting forth more details. Insufficiencies in Melfi's claims as pled cannot be cured by a brief or other documents submitted in opposition to Defendants' motion, however.  Rather, the mechanism for curing pleading deficiencies is to file an amended complaint, or formal motion for leave to amend if an amended complaint has already been filed, pursuant to Fed. R. Civ. P. 15(a).  See Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 206 (3d Cir. 2006) (upholding the district court's dismissal of plaintiffs' complaint because plaintiffs did not file a formal motion for leave to amend and stating that if plaintiffs "had been in possession of facts that would have augmented their complaint and possibly avoided dismissal, they should have pled those facts in the first instance").  Melfi has already filed an Amended Complaint in order to correct the caption to properly name Defendant Beverage Partners Worldwide.  Melfi's Amended Complaint does not appear to have substantively changed any of her allegations in her original Complaint.  In a footnote in her opposition brief, however, Melfi requests leave to amend her Complaint again if the Court determines that it is insufficient.  (Pl.'s Opp. at 34 n.15). For the reasons discussed above with regard to Count II, the Court will similarly deny this request.

*b) The Franulovic Complaint*

<u>1)    Count I </u>

With regard to Franulovic's CFA claim, the result is the same for many of the reasons discussed above.  Like Melfi, Franulovic has made very general allegations regarding untrue statements made in Enviga advertisements and the invalidity of the Coke study that supports said claims.  Coke argues that Franulovic's averments fail to comport with Rule 9(b) and, furthermore, that the allegedly misleading statements are inactionable as they constitute mere puffery.  Coke also argues that Franulovic has failed to allege specific facts showing an ascertainable loss.

With regard to pleading with particularity, Coke's brief makes substantially similar arguments to those discussed above - <u>i.e.,</u> that dismissal of the CFA claim is warranted because Franulovic never identifies which allegedly "unsubstantiated" claims she saw prior to purchasing Enviga and, thus, it is unclear what statements she relied on to her detriment. Franulovic also does not allege when or where she purchased Enviga.  Franulovic avers that she stopped drinking Enviga after seeing a "television news story that refuted Coke's claim that drinking three cans of Enviga per day would help people lose weight."  Franulovic Compl. ¶ 47.  However, she makes no allegations whatsoever regarding whether or not Enviga failed to

24

live up to its promises as to her <u>i.e.</u>, that despite drinking the product for the reasons advertised she did not lose weight or burn calories.

In response, Franulovic avers that the pleading requirements of 9(b) have been satisfied because she has averred that she read the representations on the Enviga label regarding calorie burning in making her purchasing decisions. Further, she avers that 9(b)'s requirements are misstated by Coke and that the Third Circuit has made clear that her failure to allege exact store locations or dates she purchased Enviga does not prove fatal. This Court agrees. The requirement of pleading with particularity places "the defendants on notice of the precise misconduct with which they are charged" and safeguards "against spurious charges of immoral and fraudulent behavior." <u>Seville Indus. Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984). "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them." <u>Id.</u> Therefore, Franulovic's failure to state the time and place of her purchase of Enviga has not prevented Coke from being on notice of the "precise misconduct with which they are charged." Moreover, and unlike the Melfi Complaint (discussed above), Franulovic specifically avers that she "read the Enviga can label's representations about calorie burning, [and] increased her consumption to three cans per day

25

with the understanding that this would help her lose weight."
Franulovic Compl. ¶ 46.

Nevertheless, Coke is correct that Franulovic has failed to
adequately plead an ascertainable loss and her claim is subject
to dismissal pursuant to rule 12(b)(6).  See Wolfe v. Nobel
Learning Communities, Inc., No. 06-3921, 2006 U.S. Dist. LEXIS
93055 at * 4 (D.N.J. Dec. 26, 2006) (even when the claims are not
subject to Rule 9(b)'s heightened pleading requirements, the
claimant must set forth sufficient information to outline the
elements of its claims or to permit inferences to be drawn that
these elements exist).  Franulovic has not alleged that she or
members of the class failed to burn more calories or lose weight.
Instead, she merely avers that she stopped drinking Enviga after
viewing a television news story.  It is, therefore, unclear what,
if any, "cognizable and calculable claim of loss due to the
alleged CFA violation" Franulovic suffered.  Thiedemann v.
Mercedes-Benz USA, 183 N.J. 234, 249 (2005).  Therefore, because
Franulovic has failed to adequately allege an ascertainable loss,
the CFA claim will be dismissed.  See Solo, 2007 U.S. Dist. LEXIS
31088 at *10 (requiring plaintiff to set forth allegations that
what she received was of lesser value than what was promised).


        2)   Count II

Coke argues that it is entitled to dismissal on Count II of Franulovic's Complaint because it "differs from the first [Count] only by asserting that an alleged violation of the New Jersey food and drug laws" as an additional basis for a claim under the CFA. In essence, Franulovic is only asserting a single cause of action: one for violation of the CFA.  Coke's Br. at 2. Moreover, Coke argues that there is no private right of action under the New Jersey Food and Drug laws so her attempt to rely on the alleged misbranding of Enviga fails.  Franulovic counters by saying that New Jersey courts have repeatedly held that the CFA makes violations of other consumer protection statutes actionable.

Regardless of whether Count II should be combined with Count I, under the rubric of the CFA, because Franulovic has failed to allege an ascertainable loss, a key element of a CFA claim as discussed above, this claim will also be dismissed.[3]

**Conclusion:**

*a) Melfi*

For the reasons expressed above, Melfi's claim that Defendants breached the implied warranty of fitness for a

---

[3] This Court notes that, unlike Melfi, Franulovic did not request leave to amend.  See Fletcher-Harlee Corp., 482 F.3d at 253 (discussing amendment procedure before and after entry of final judgment).

27

particular purpose (Count II) and Melfi's claim that Defendants violated the CFA (Count III) must be dismissed.

b) *Franulovic*

Because Franulovic has failed to properly allege an ascertainable loss, her entire Complaint, based on two CFA counts, will be dismissed.

Appropriate Orders will issue this date.

Dated: October 25, 2007            **s/Renée Marie Bumb**
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE